IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:18-CV-209-KS

| | |
|---|---|
| CHRISTY KENNON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | **ORDER** |
| ANDREW M. SAUL, Commissioner ) | |
| of Social Security Administration,[1] ) | |
| ) | |
| Defendant. ) | |

This matter is before the court on the parties' cross motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, the parties having consented to proceed pursuant to 28 U.S.C. § 636(c). Christy Kennon ("Plaintiff") filed this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of the denial of her application for a period of disability and disability insurance benefits ("DIB"). The time for filing responsive briefs has expired, and the pending motions are ripe for adjudication. On June 5, 2019, the court held oral argument in the matter and, on June 11, 2019, Plaintiff filed a notice waiving her previously asserted Appointments Clause argument under *Lucia v. S.E.C.*, 138 S. Ct. 2044 (2018).[2] The

---

[1] Plaintiff's complaint names Nancy A. Berryhill, in her official capacity as Acting Commissioner of the Social Security Administration, as the defendant to this action. Andrew M. Saul now holds the office of Commissioner and is hereby substituted as the defendant to this action. *See* Fed. R. Civ. P. 25(d).

[2] Plaintiff argued that at the time of the decision, the ALJ's appointment did not comply with the Appointments Clause of the U.S. Constitution under *Lucia v.*

court has carefully reviewed the administrative record and the motions and memoranda submitted by the parties. For the reasons set forth below, the court grants Plaintiff's Motion for Judgment on the Pleadings [DE #36], denies Defendant's Motion for Judgment on the Pleadings [DE #40], and remands the matter to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings.

## STATEMENT OF THE CASE

Plaintiff applied for a period of disability and DIB on August 24, 2015, with an alleged onset date of June 5, 2015. (R. 63, 80, 168–74.) The application was denied initially and upon reconsideration, and a request for hearing was filed. (R. 99–103, 106–21.) A hearing was held on December 4, 2017, before Administrative Law Judge ("ALJ") Joseph L. Brinkley, who issued an unfavorable ruling on January 11, 2018. (R. 13–28, 38–62.) On March 14, 2018, the Appeals Council denied Plaintiff's request for review. (R. 1–5.) At that time, the ALJ's decision became the final decision of the Commissioner. *See* 20 C.F.R. § 404.981. On May 14, 2018, Plaintiff filed the instant civil action, seeking judicial review of the final administrative decision pursuant to 42 U.S.C. § 405(g).

---

*S.E.C.*, 138 S. Ct. 2044 (2018). Plaintiff has withdrawn this argument in light of cases pending before the Fourth Circuit to avoid delays in the adjudication of her case. (Notice of Waiver of Lucia Argument [DE #51].)

# DISCUSSION

## I. Standard of Review

The scope of judicial review of a final agency decision denying disability benefits is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; [i]t consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971), and *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)) (citations omitted) (alteration in original). "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig*, 76 F.3d at 589) (first and second alterations in original). Rather, in conducting the "substantial evidence" inquiry, the court determines whether the Commissioner has considered all relevant evidence and sufficiently explained the weight accorded to the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997).

## II. Disability Determination

In making a disability determination, the Commissioner utilizes a five-step evaluation process. The Commissioner asks, sequentially, whether the claimant:

(1) is engaged in substantial gainful activity; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of an impairment listed in 20 C.F.R. Part 404, Subpart P, App. 1; (4) can perform the requirements of past work; and, if not, (5) based on the claimant's age, work experience, and residual functional capacity can adjust to other work that exists in significant numbers in the national economy. *See* 20 C.F.R. § 404.1520(a)(4); *Albright v. Comm'r of Soc. Sec. Admin.*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Pass v. Chater*, 65 F.3d 1200, 1203 (4th. Cir. 1995). At the fifth step, the burden shifts to the Commissioner to show that other work exists in the national economy that the claimant can perform. *Id.* "The Commissioner typically offers this evidence through the testimony of a vocational expert responding to a hypothetical that incorporates the claimant's limitations. If the Commissioner meets her burden, the ALJ finds the claimant not disabled and denies the application for benefits." *Mascio v. Colvin*, 780 F.3d 632, 634–35 (4th Cir. 2015).

## III. ALJ's Findings

As a preliminary matter, the ALJ found Plaintiff meets the insured status requirements of the Social Security Act ("the Act") through December 31, 2020. (R. 15.) Applying the five-step, sequential evaluation process, the ALJ found Plaintiff "not disabled" as defined in the Act. At step one, the ALJ found Plaintiff had not engaged in substantial gainful employment since June 5, 2015, the alleged onset date. (*Id.*) Next, the ALJ determined Plaintiff had the following severe impairments:

4

"narcolepsy,[3] cataplexy,[4] and autoimmune disease." (R. 16.) The ALJ found Plaintiff's anterior cruciate ligament rupture in her left knee, irritable/inflamed bowel syndrome including constipation and occasional diarrhea, migraine headaches, eye conditions of hypertropia and exotropia, and depression to be non-severe impairments as they had either resolved, were medically managed with conservative treatment, or did not cause more than minimal limitations in Plaintiff's ability to engage in work-related activities. (R. 16–18.)

At step three, the ALJ concluded that Plaintiff's impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, App. 1. (R. 18.) The ALJ analyzed Plaintiff's autoimmune disease and symptoms of fatigue, muscle weakness, nausea, and joint pain under Listing 14.00 (immune system disorders). (R. 19.) Although there is no specific listing for narcolepsy and cataplexy, the ALJ compared these impairments with Listing 11.02 (epilepsy) and found the requirements were not met nor medically equaled.[5] (R. 18–19.)

---

[3] Narcolepsy is defined as "recurrent, uncontrollable, brief episodes of sleep, often associated with hypnagogic or hypnopompic hallucinations, cataplexy, and sleep paralysis." *Dorland's Illustrated Medical Dictionary* at 1232 (32nd ed. 2012) ("*Dorland's*").

[4] Cataplexy is defined as "a condition in which there are abrupt attacks of muscular weakness and hypotonia triggered by an emotional stimulus such as mirth, anger, fear, or surprise. It is often associated with narcolepsy." *Dorland's*, at 303.

[5] The Social Security Administration uses an instructional Program Operations Manual System ("POMS") in processing claims for Social Security benefits. Section DI 24580.005 of POMS provides guidance "when evaluating medical

Prior to proceeding to step four, the ALJ assessed Plaintiff's residual functional capacity ("RFC") and found that Plaintiff had

> the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b), except she: can occasionally use the upper extremities to engage in bilateral reaching, pulling, pushing, and overhead lifting of no more than 5 pounds; can otherwise frequently reach, lift, pull and push in all other directions; can occasionally, as opposed to frequently, use the upper extremities to handle, finger, feel, and grasp bilaterally; can occasionally climb stairs and ramps, kneel and crouch; can occasionally use the dominate lower left extremity to operate foot and leg controls; cannot crawl and or climb ladders, ropes, or scaffolds; can have occasional exposure to temperature extremes; cannot work around dangerous, moving mechanical parts or unprotected heights; will need to work in a moderate work environment; is limited to low stressed occupations not requiring her to complete a fixed number of production quotas on a set timeline and/or to perform fast paced assembly line work; will need unimpeded access to the restroom during regularly scheduled breaks and will be routinely absent from work one day a month.

(R. 19.) In making this assessment, the ALJ found Plaintiff's statements concerning the intensity, persistence and limiting effects of Plaintiff's symptoms "not entirely consistent with the medical evidence and other evidence in the record." (R. 20.) At step four, the ALJ concluded that Plaintiff is unable to perform past relevant work as a customer service representative in the medical equipment industry. (R. 26.) Nonetheless, at step five, upon considering Plaintiff's age, education, work experience, and RFC, the ALJ determined there are jobs that exist in significant numbers in the national economy that Plaintiff could perform, namely: counter clerk, usher, and furniture rental consultant. (R. 26–27.) The ALJ concluded that Plaintiff

---

severity, the closest listing to equate narcolepsy with is Listing 11.02, Epilepsy." POMS § DI 24580.005 (Evaluation of Narcolepsy), available at http://policy.ssa.gov/poms.nsf/lnx/0424580005 (last visited Aug. 23, 2019).

was not disabled under the Act since June 5, 2015, Plaintiff's alleged onset date. (R. 27.)

IV.  **Plaintiff's Arguments**

Plaintiff contends the Commissioner erred by:

(A) failing to include Plaintiff's limitations from her narcolepsy impairment in the RFC (Pl.'s Mem. Supp. Mot. J. Pldgs. [DE #37] at 6–8); and

(B) failing to evaluate and assign weight to Plaintiff's treating physician, Dr. Heidi Lee Schecodnic (*id.* at 8–9).

The Commissioner argues that substantial evidence supports the ALJ's RFC determination and that the ALJ thoroughly considered all of Plaintiff's treatment notes, including those of Dr. Schecodnic. (Def.'s Mem. Supp. Mot. J. Pldgs. [DE #41] at 5–12.) For the reasons discussed below, the undersigned disagrees with the Commissioner and, therefore, orders remand.

A.  **RFC Assessment**

The RFC is an administrative assessment of "an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis" despite impairments and related symptoms. SSR 96–8p, 1996 WL 374184, at *1; *see also* 20 C.F.R. § 416.945(a)(1). In determining the RFC, the ALJ considers an individual's ability to meet the physical, mental, sensory, and other requirements of work. 20 C.F.R. § 416.945(a)(4). It is based upon all relevant evidence, which may include the claimant's own description of limitations from alleged symptoms. SSR 96–8p, 1996 WL 374184, at *5; 20 C.F.R. § 404.1545(a)(3).

The RFC assessment "must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence." SSR 96–8p, 1996 WL 374184, at *7.

An ALJ must "include a narrative discussion describing how the evidence supports each conclusion" in the RFC. *Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016) (quoting *Mascio*, 780 F.3d at 636). The ALJ must specifically explain how certain pieces of evidence support particular conclusions and "discuss[ ] . . . which evidence the ALJ found credible and why." *Monroe*, 826 F.3d at 189 (quoting *Radford v. Colvin*, 734 F.3d 288, 295 (4th Cir. 2013)). The Fourth Circuit has interpreted this to require an ALJ to "build an accurate and logical bridge from the evidence to his conclusion." *Monroe*, 826 F.3d at 189 (quoting *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000)).

"[A] proper RFC analysis has three components: (1) evidence, (2) logical explanation, and (3) conclusion . . . . [M]eaningful review is frustrated when an ALJ goes straight from listing evidence to stating a conclusion." *Thomas v. Berryhill*, 916 F.3d 307, 311 (4th Cir. 2019) (citing *Woods v. Berryhill*, 888 F.3d 686, 694 (4th Cir. 2018)). Simply put, this means an ALJ must "[s]how [her] work." *Patterson v. Comm'r of Soc. Sec. Admin.*, 846 F.3d 656, 663 (4th Cir. 2017) (applying same principle to an ALJ's listing analysis). Such analysis—"[h]armonizing conflicting evidence and bolstering inconclusive findings," *Patterson*, 846 F.3d at 662—is a "necessary predicate" to determining whether substantial evidence supports the Commissioner's findings, *Monroe*, 826 F.3d at 189 (quoting *Radford*, 734 F.3d at 295). "An ALJ has a

8

duty to explain the administrative decision so as to enable meaningful judicial review." *Parker v. Colvin*, No. 4:13-CV-38-FL, 2014 WL 2604282, at *3 (E.D.N.C. June 11, 2014). Where a court is "left to guess about how the ALJ arrived at his conclusions on [a claimant's] ability to perform relevant functions . . . , remand is necessary." *Mascio*, 780 F.3d at 637.

Here, the court finds the ALJ has not fulfilled this duty. The ALJ found Plaintiff had the RFC to perform a reduced range of light work and imposed numerous limitations to address Plaintiff's severe and non-severe impairments. (R. 19.) However, the ALJ did not address how Plaintiff can manage her narcolepsy and cataplexy with scheduled naps to work a full workday and workweek. Rather, the ALJ rejected Plaintiff's "alleged disabling symptoms of narcolepsy and cataplexy," finding that "treatment notes show that with proper medication and short, occasional naps, [Plaintiff's] symptoms can be substantially eliminated, and she could function throughout a normal workday." (R. 25.) The ALJ's finding in this regard is not supported by substantial evidence.

The ALJ refused to impose a restriction that Plaintiff be "permitted three 30-minute breaks daily" finding such limitation to be "inconsistent with the objective evidence, which shows that with proper medication [Plaintiff] can function without the need of structured nap therapy." (R. 25–26, 61.) In support of this finding, the ALJ cited to March 2017 treatments notes from Duke Neurology where Plaintiff reported she was not taking her methylphenidate medication due to a gap in her insurance coverage and was managing her narcolepsy with timed naps, as she was

9

not working at the time. (R. 1534.) When not on medication, Plaintiff was sleeping up to three hours at a time. (*Id.*) Plaintiff stated that when taking her methylphenidate medication, she was "able to stay awake and alert throughout the day with only occasional short naps." (*Id.*)

The ALJ failed to account in the RFC that even with medication, Plaintiff still required scheduled naps—albeit in shorter durations. In November 2017, Plaintiff reported that while on medication, she was taking three naps per day for thirty minutes (R. 1586.) Although Plaintiff reported "feeling better" with medication, she was able to take scheduled naps at the time due to her unemployment. (R. 1227, 1369, 1487.) It is unclear to the court how Plaintiff would be able to sustain a full workday in light of needing to take multiple, timed naps throughout the day.

The court finds that substantial evidence does not support the ALJ's conclusion because the record reflects that even with medication, Plaintiff required multiple naps throughout the day. The Vocational Expert ("VE") testified that Plaintiff would be precluded from working full time if required to take three 30-minute breaks daily. (R. 61.) The ALJ has failed to build a logical bridge—from the evidence in the record demonstrating that Plaintiff requires multiple naps a day to manage her narcolepsy—to the conclusion that Plaintiff could work a full workday and workweek. Accordingly, the court remands the matter to the Commissioner for further proceedings.

B.   Heidi Lee Schecodnic, M.D.

Plaintiff also argues the ALJ failed to evaluate and assign weight to Plaintiff's treating physician, Dr. Heidi Lee Schecodnic. (Pl.'s Mem. Supp. J. Pldgs. at 8.) The Commissioner argues the ALJ considered the medical record as a whole—including Dr. Schecodnic's treatment notes—and thus should be affirmed. (Def.'s Mem. Supp. J. Pldgs. at 12.) Because this matter is being remanded for further consideration of Plaintiff's RFC, the court need not address the ALJ's consideration of the medical evidence at this time.

## CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Judgment on the Pleadings [DE #36] is GRANTED, Defendant's Motion for Judgment on the Pleadings [DE #40] is DENIED, and the case is REMANDED to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further consideration.

This 6th day of September 2019.

_____
KIMBERLY A. SWANK
United States Magistrate Judge